# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **AIR-SEA SYSTEMS, LLC,** *Plaintiff*, v. **GRAZEL FOUNDATION, LLC,** *Defendant, Third Party Plaintiff* v. **UNITED STATES OF AMERICA,** *et al.*, *Third Party Defendants.* | Civil No. 21-01581 (MAJ) |

## OPINION AND ORDER

### I.   Introduction

Before the Court is a dispute that arises from a contract Plaintiff Air-Sea Systems, LLC ("Air-Sea") entered into with the National Oceanic and Atmospheric Administration ("NOAA") to construct a sea platform at Magueyes Island in Lajas, Puerto Rico. Air-Sea subcontracted a portion of the project to Defendant Grazel Foundation LLC ("Grazel"). However, Grazel allegedly failed to comply with the contract specifications and engineering drawings that Air-Sea contracted for.

On December 2, 2021, Air-Sea filed the instant action against Grazel, alleging breach of contract and defamation. (**ECF No. 1 at 1**). Thereafter, Grazel filed an Answer to the Complaint, counterclaimed and initiated a Third-Party Complaint against NOAA and the United States Department of Commerce, ("Department of Commerce") among

other defendants. (**ECF No. 10**). Grazel's Third-Party Complaint contends, (and the United States as a Third-Party Defendant does not dispute) that § 1374 of the Puerto Rico Civil Code of 2020 grants a subcontractor a direct action against the owner of a construction project for nonpayment of any portion of work done. (**ECF No. 10 at 9; ECF No. 45 at 3**). Accordingly, Grazel is seeking a judgment against Third Party Defendant, the United States of America ("United States"), by way of the Department of Commerce, in the amount of $48,000.00 for unpaid portions of the contract between Grazel Foundation and Air-Sea. (**ECF No. 10 at 9**). Presently before the Court is the United States' unopposed Motion to Dismiss directed at Grazel's Third Party Complaint. (**ECF No. 44; ECF No. 45**).

## II.    Factual Background

According to Air-Sea's Complaint, it entered into a contract with NOAA to construct a sea platform at Magueyes Island in Lajas, Puerto Rico. (**ECF No. 1 at 1**). Air-Sea subcontracted Grazel for the installation of pilings and construction of a sea platform. *Id*. Grazel, however, is accused of failing to comply with the contract specifications and engineering drawings. *Id*. Furthermore, Grazel neglected to pay its subcontractors, leaving Air-Sea to face their claims for payment. *Id*. When Air-Sea demanded that Grazel fulfill its contractual obligations, Grazel purportedly responded by making defamatory statements about Air-Sea to NOAA and other third parties. *Id*. Air-Sea now seeks compensation for the cost of completing the contracted work under a breach of contract claim and for damages resulting from Grazel's alleged defamatory statements. *Id*.

According to the Third-Party Complaint, Grazel alleges that, despite completing the project, Air-Sea owes Grazel $48,000 plus interest and penalties for work performed under their contract. (**ECF No. 1 at 1**). As mentioned, Grazel contends that under § 1374

of the Puerto Rico Civil Code of 2020, subcontractors have a direct action against the owner of a construction project for nonpayment of work done for a project contractor. (**ECF No. 10 at 9**). Therefore, as the owner of the Magueyes Project, NOAA is responsible for the unpaid portion of the contract between Grazel and Air-Sea. *Id*. Grazel claims that they have been unsuccessful in securing payment for the work performed on the Magu eyes Project. *Id*. Consequently, Grazel requests the Court enter a judgment against NOAA and in favor of Grazel for the amount owed under the contract, which totals $48,000 plus interest and penalties. *Id*.

### III. Standard of Review under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). "A fundamental principle of the structure of our democracy is that federal courts are courts of limited jurisdiction." *Destek Group, Inc. v. State of New Hampshire Pub. Utilities Commn.*, 318 F.3d 32, 38 (1st Cir. 2003) (first citing *Owen Equip. & Erection Co. v. Kroeger*, 437 U.S. 365, 374; and then citing *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 499 (1st Cir. 2000)).

The party asserting federal jurisdiction, bears the burden of establishing its existence. *Reyes-Colón v. U.S.*, 974 F.3d 56, 60 (1st Cir. 2020). "When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court 'may consider whatever evidence has been submitted, such as … depositions and exhibits.'" *Grillasca-Palou v. U.S. Postal Serv.*, 573 F. Supp. 2d 493, 494 (D.P.R. 2008) (quoting *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996)).

Motions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6). *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir. 1994). To survive dismissal for failure to state a claim, a complaint must allege "a plausible

entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007). According to *Twombly,* the complaint must state enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. at 545.

At the motion to dismiss stage, a court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz,* 669 F.3d 50, 55 (citing *Ocasio-Hernández v. Fortuño-Burset*, 650 F.3d 1, 12 (1st Cir. 2011)). A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, at 555). A court need not "credit conclusory legal allegations or factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (cleaned up) (quoting *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022)).

A complaint that rests on "'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like' will likely not survive a motion to dismiss." *Niagara Bottling, LLC v. CC1 LP*, 381 F. Supp. 3d 175, 181 (D.P.R. 2019) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Peñalbert-Rosa v. Fortuño-Burset,* 631 F.3d 592, 595 (1st Cir. 2011). "[P]ure speculation is not" given credit at the motion to dismiss phase. *Id*. at 596; *see Méndez Internet Mgmt. Servs. v.*

*Banco Santander de P.R.,* 621 F.3d 10, 14 (1st Cir. 2010) (*Twombly* and *Iqbal* standards require district courts to "screen[] out rhetoric masquerading as litigation.").

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." *Twum-Baah v. U.S. Dept. of Agric.*, 299 F. Supp. 3d 369, 372 (D.P.R. 2018) (quoting *Rosario–Gonzalez v. Seguros Multiples*, 13-cv-1079 (JAF), 2013 WL 4045740, at *1 (D.P.R. Aug. 7, 2013), *aff'd* (June 11, 2014) (citing *Northeast Erectors Ass'n of BTEA v. Secretary of Labor, Occupational Safety & Health Admin.*, 62 F.3d 37 (1st Cir. 1995)). "If the Court determines that subject matter jurisdiction does not exist it must dismiss the case and not make any determination on the merits of the case." *Twum-Baah,* 299 F. Supp. 3d, at 372 (quoting *Fernandez Molinary v. Industrias La Famosa, Inc.*, 203 F. Supp. 2d at 114 (D.P.R. 2002)).

## IV.   Legal Analysis

### a.  *Failure to Respond to Instant Motion*

From the outset, the Court must first determine the consequences of failing to oppose the instant Motion to Dismiss. When deciding a 12(b)(6) motion, "the mere fact that a motion to dismiss is unopposed does not relieve the district court of the obligation to examine the complaint itself to see whether it is formally sufficient to state a claim." *Vega–Encarnación v. Babilonia,* 344 F.3d 37, 41 (1st Cir. 2003) (citations omitted). This obligation means that a court may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default. *See Pinto v. Universidad De Puerto Rico,* 895 F.2d 18, 19 & n. 1 (1st Cir. 1990) (rejecting defendants' argument that "a court may, without notice, take a failure to respond to a motion to dismiss as a default, warranting dismissal irrespective of substantive merit.").

However, "it is within the district court's discretion to dismiss an action based on a party's unexcused failure to respond to a dispositive motion when such response is required by local rule, at least when the result does not clearly offend equity." *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 7 (1st Cir. 2002); *see Pinto,* 895 F.2d at 19 & n. 1 (noting that a court may treat the failure to respond to a motion to dismiss as a procedural default "where a court had ordered a memorandum, and of course, cases where a response was required by rule." (citations omitted)). Where a local rule expressly requires a response to a motion, the non-moving party is placed on notice that failure to respond could result in a procedural default. *See Pinto,* 895 F.2d at 19 & n. 1. In such cases, the local rule provides the basis for dismissal rather than Fed. R. Civ. P. 12(b)(6), which does not on its own terms require a response to a motion to dismiss. Where a district court grants an unopposed motion to dismiss pursuant to a local rule that requires a response, that decision will be upheld by a reviewing court as long as "it does not offend equity or conflict with a federal rule." *Pomerleau v. W. Springfield Pub. Schools*, 362 F.3d 143, 145 (1st Cir. 2004).

Here, the Court will examine the Third-Party Complaint to determine whether Grazel has established subject matter jurisdiction enabling the Court to hear the present dispute. And if so, whether the Third-Party Complaint plausibly sets forth a claim upon which relief can be granted.

  b. *Lack of Subject Matter Jurisdiction due to Sovereign Immunity*

The United States as a sovereign can be hauled into court only if it consents to be sued. *Merlonghi v. U.S.*, 620 F.3d 50, 54 (1st Cir. 2010); *see also Quiñones Sepúlveda v. U.S.*, 329 F. Supp. 2d 260, 263 (D.P.R. 2004) ("It is well established that the United States, as sovereign, is immune from suit unless it consents to be sued." (citing *United*

*States v. Mitchell*, 445 U.S. 535, 538 (1980)). Importantly, Congress's waiver of sovereign immunity must be "unequivocally expressed in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012). A court's jurisdiction to entertain a lawsuit against the United States is defined by the terms of the government's consent to be sued. *See Wilkins v. United States*, 143 S. Ct. 870, 881 (2023) (emphasizing that sovereign immunity is fundamentally a matter of jurisdiction). Absent a waiver of sovereign immunity, a court is without subject matter jurisdiction to proceed. *United States v. Testan,* 424 U.S. 392, 399 (1976).

In this case, Grazel bears the burden of establishing the United States waived its sovereign immunity through a Congressionally enacted statute. *See Rivera Cappacetti v. Pedro Quiles HNC Tech. Mgt. Corp.*, 18-cv-1860 (DRD), 2019 WL 2553624, at *4 (D.P.R. June 20, 2019) (when analyzing if the United States' sovereign immunity has been waived by Congress, any waivers are strictly interpreted favoring the government and "it is the plaintiff's burden to prove the existence of subject matter jurisdiction.") If this waiver is established, the Court would thereby have subject matter jurisdiction to entertain the Grazel's claim against the United States. But "lack of subject-matter jurisdiction basically means the court has no authority to decide the case either way." *Reyes-Colon v. U.S.*, 974 F.3d 56, 58 (1st Cir. 2020) (cleaned up).

Here, Grazel has not identified any such waiver of sovereign immunity. Grazel relies on § 1374 of the Puerto Rico Civil Code of 2020 as statutory support for the instant suit. However, Grazel does not argue nor does § 1374 of the Puerto Rico Civil Code surrender the United States' sovereign immunity. Indeed, as Courts in this Circuit have noted, "the United States . . . has not waived its sovereign immunity for suits under Puerto Rico's laws." *Velazquez-Rivera v. Danzig*, 234 F.3d 790, 795 (1st Cir. 2000); *Orench v. Duke*, 17-cv-1715 (JAG), 2023 U.S. Dist. LEXIS 75857, at *15 (D.P.R. May 1, 2023) (same);

*Gazco-Hernandez v. Neffenger*, 299 F. Supp. 3d 351, 365 (D.P.R. 2018) (same); *Dorsey v. Kelly*, No. 17-cv-1542 (PAD), 2017 U.S. Dist. LEXIS 195416, at *5 (D.P.R. Nov. 27, 2017) (same); *Vazquez-Rivera v. United States*, 11-cv-1346 (JAF), 2012 BL 157877, at *5 (D.P.R. June 26, 2012) (same).

While Grazel has not raised the issue, the United States concedes that the Tucker Act, 28 U.S.C. § 1491 ("Tucker Act"), can allow some contract disputes to overcome sovereign immunity. The Tucker Act constitutes the sole basis for a suit against the United States grounding in breach of contract and exclusive jurisdiction is vested upon the Federal Court of Claims if the claim exceeds $10,000.00. *Martinez v. U.S.*, 04-cv-1970 (DRD), 2006 WL 468707, at *4 (D.P.R. Feb. 27, 2006); *see e.g., Barth v. U.S.*, 18-2243, 2019 WL 13127582, at *1 (1st Cir. Aug. 7, 2019) (noting Federal Claims Court has exclusive jurisdiction for claims against the United States exceeding $10,000); *U.S. v. Esso Stand. Oil Co.*, 584 F. Supp. 157, 162 (D.P.R. 1984) ("[w]here the relief sought against the United States exceeds $10,000, the Claims Court has exclusive jurisdiction.") Claims under the $10,000.00 threshold are cognizable in the district courts. *Id*. Here, Grazel is seeking more than $48,000.00 from NOAA for "monies owed to them by Air Sea Systems for worked [sic] performed in the Magueyes Project." (**ECF No. 10 at 9**). On this basis alone, this Court is not the appropriate forum to adjudicate Grazel's claim given the Federal Court of Claims is vested with exclusive jurisdiction to hear contract disputes exceeding $10,000 against the United States. *See Reyes de Leon v. Coconut Prop., LLC*, 546 F. Supp. 3d 116, 122 (D.P.R. 2021) (dismissing plaintiff's breach of contract and unjust enrichment claims for lack of jurisdiction where plaintiff sought recovery in excess of the $10,000 limit for federal district courts.)

Additionally, Defendants assert that the Tucker Act's waiver of sovereign immunity does not apply here because Grazel does not meet the CDA's definition of a contractor. (**ECF No. 45 at 8**). According to 41 U.S.C. § 7101(7), "the term 'contractor' means a party to a Federal Government contract other than the Federal Government." As the Defendants accurately highlight, numerous court rulings have established that subcontractors, in general, lack a direct contractual relationship with the federal government and are therefore ineligible to bring a claim under the CDA. *Montano Elec. Contractor v. United States*, 114 Fed. Cl. 675, 680 (2014); *JGB Enterprises, Inc. v. U.S.*, 63 Fed. Cl. 319, 330 (Fed. Cl. 2004), *aff'd sub nom. J.G.B. Enterprises, Inc. v. U.S.*, 497 F.3d 1259 (Fed. Cir. 2007) ("[g]enerally, subcontractors cannot sue the Government directly due to a lack of privity with the United States."). Moreover, the CDA does not cover government contractors' disputes with their subcontractors. *Agviq, LLC v. Right Way Envtl. Contractors*, 17-cv-02034 (WGY), 2018 WL 1166607, at *6 (D.P.R. Mar. 1, 2018) (citing *NavCom Def. Elecs., Inc. v. Ball Corp.*, 92 F.3d 877, 879 (9th Cir. 1996) (per curiam); *United States W. Commc'ns Servs., Inc. v. United States*, 940 F.2d 622, 627 (Fed. Cir. 1991) ("A government contractor's dispute with its subcontractor was by definition specifically excluded from CDA coverage.")).

Subcontractors can only lodge claims against the government "by having the prime contractor 'sponsor' and certify the subcontractor's claim." *Agviq, LLC v. Right Way Envtl. Contractors*, 2018 WL 1166607, at *6 (citing *NavCom Def. Elecs., Inc. v. Ball Corp.*, 92 F.3d 877, 880 (9th Cir. 1996)). However, this proceeding cannot resolve disputes between the subcontractor and prime contractor as to the "amount due the subcontractor," but rather may address "claim[s] for additional compensation to the prime contractor itself." *Agviq,* at *6 (citing *United States v. Zurich Am. Ins. Co.*, 99 F.

Supp. 3d 543, 547 (E.D. Pa. 2015)). Therefore, the Court agrees with the United States that Grazel is not 'contractor' as defined under 41 U.S.C. § 7101(7). Moreover, Grazel as a subcontractor, does not contend to be in direct privity with the United States. Along that line, the Court does not find Grazel has standing to bring a claim under the CDA.

That said, Grazel can demonstrate this Court has jurisdiction to hear its claim, if it establishes it is an "intended third-party beneficiary" of the Air-Sea-NOAA contract. While it is generally the case that the Tucker Act does not provide the court with jurisdiction to hear a claim brought directly against the federal government by a subcontractor, an exception exists, which allows an intended third-party beneficiary of a government contract to enforce its rights directly against the federal government.[1] *See* 28 U.S.C. § 1491(a) (2012); *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed. Cir. 1983); *G4S Tech. LLC v. U.S.*, 114 Fed. Cl. 662, 669 (Fed. Cl. 2014), *aff'd,* 779 F.3d 1337 (Fed. Cir. 2015). For a subcontractor to obtain the status of an intended third-party beneficiary, it must provide clear evidence that an authorized government official approved a contract provision for the express purpose of effectuating payment from the government to the subcontractor. *G4S Tech. LLC v. U.S.*, 114 Fed. Cl. 662, 672–73. This showing can be satisfied by the unambiguous language of the prime contract and any modifications made thereto, and by other objective evidence that clearly demonstrates the authorized official's unambiguous intent to ensure payment to the subcontractor. *Id.* As mentioned, Air-Sea contracted with NOAA for the construction of a sea platform. Air-Sea then subcontracted Grazel for the installation of pilings and other related work. Importantly, Grazel's Complaint does not claim to be a third-party beneficiary in the

---

[1] A subcontractor who is a third-party beneficiary to the prime contract may sue the government in the Claims Court under the Tucker Act, 28 U.S.C.A. § 1491, but not under the CDA. *Winter v. FloorPro Inc.*, 570 F.3d 1367 (Fed. Cir. 2009).

NOAA-Air Sea contract. Nor is there any evidence "that an authorized government official approved a contract provision for the express purpose of effectuating payment from the government to" Grazel. *See G4S Tech. LLC v. U.S.*, at 672–73. As such, Grazel is not an "intended third-party beneficiary" of a government contract, and therefore lacks standing to sue under the Tucker Act. Consequently, this Court lacks subject matter jurisdiction to consider Grazel's suit against the United States based on sovereign immunity. Accordingly, Grazel's Third Party Complaint, must be dismissed.[2]

### V. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss pursuant Fed. R. Civ. P. 12(b)(1) is **GRANTED** (**ECF No. 44**) and Grazel's Third-Party Complaint is **DISMISSED without PREJUDICE. (ECF No. 10**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of June 2023.

> **S/ MARÍA ANTONGIORGI-JORDÁN**
> **United States District Judge**

---

[2] Given the Court's finding that subject matter jurisdiction does not exist it must dismiss the case and will refrain from making any determination on the merits of the case. *See Twum-Baah v. U.S. Dept. of Agric.*, 299 F. Supp. 3d 369, 372 (D.P.R. 2018).